LABARGA, J.
This case is before the Court for review of the decision of the Second District Court of Appeal in Haygood v. State, 54 So.3d 1035 (Fla. 2d DCA 2011), in which the Second District certified a question to this Court to be of great public importance. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We rephrase the certified question as follows:
IF A JURY RETURNS A VERDICT FINDING A DEFENDANT GUILTY OF SECOND-DEGREE MURDER, DOES A TRIAL COURT COMMIT FUNDAMENTAL ERROR BY GIVING AN ERRONEOUS MANSLAUGHTER BY ACT INSTRUCTION WHEN IT ALSO GIVES AN INSTRUCTION ON MANSLAUGHTER BY CULPABLE NEGLIGENCE AND THE EVIDENCE SUPPORTS ONLY A THEORY OF MANSLAUGHTER BY ACT?
Id. at 1038. For the reasons explained below, we answer the certified question in the affirmative. We hold that giving the erroneous manslaughter by act instruction, which we found to be fundamental error in State v. Montgomery, 39 So.3d 252 (Fla.2010),[1] is also fundamental error even if the instruction on manslaughter by culpable negligence is given where the evidence supports manslaughter by act but does not support culpable negligence and the defendant is convicted of second-degree murder.
FACTS AND PROCEDURAL HISTORY
Jeremy Haygood was tried in September 2009 on the charge of second-degree murder for the November 2008 death of his girlfriend, Jeanine Tuckey, in Pinellas County, Florida. The State presented evidence that Haygood became angry with Tuckey and, at various times during the argument, head-butted her, kicked her legs out from under her, choked her, and elbowed her in the chest. When Tuckey became unresponsive, Haygood ran indoors and told her mother to call for an ambulance, and he attempted to perform CPR until the ambulance arrived. The beating, during which she hit her head, resulted in swelling in her brain that damaged her brain and brain stem. Tuckey fell into a permanent coma from which the neurologist advised she would never recover. She died after being removed from life support the day after her injuries.
After Haygood was advised of his rights, he told police that he had consumed about nine beers in a five-hour period that afternoon and evening before Tuckey was injured and was “[n]ot sober but ... wasn’t drunk.” Haygood first told police he only elbowed Tuckey twice in the chest “in a blind rage” over her infidelity. Haygood said that he hit her a couple of times “to prove a point, get her attention,” but not to seriously hurt her. He later admitted to the much more extensive beating. Hay-good expressed remorse in the police interview and said, “It was an accident.... [Wjhat I did was on purpose, but I didn’t mean to kill her.”
The jury was instructed without objection as to second-degree murder and the lesser included offense of manslaughter. The manslaughter instruction included the instructions on manslaughter by act and manslaughter by culpable negligence. *738 Haygood was subsequently found guilty of second-degree murder. He appealed to the Second District Court of Appeal, alleging that fundamental error occurred when the jury was given the then-standard jury instruction on manslaughter by act, which this Court held to be fundamental error in Montgomery, 39 So.3d at 258. We turn first to discuss the manslaughter by act instruction given in this case.
The Instruction Given in this Case
The jury was instructed in Haygood’s trial in pertinent part as follows:
THE COURT: Therefore, if you decide that the main accusation [of second-degree murder] has not been proved beyond a reasonable doubt, you will next need to decide if the defendant is guilty of any lesser included crime. The lesser included crime ... is manslaughter.
To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt. Number one, Jeanine Tuckey is dead. Number two, Jeremy Haygood intentionally caused the death of Jeanine Tuckey, or the death of Jeanine Tuckey was caused by culpable negligence of Jeremy Haygood. However, the defendant cannot be found guilty of manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.
(Emphasis added). In closing argument, the prosecutor argued that there are two ways to prove manslaughter and, under the first way, the State must prove that Haygood intentionally caused Tuckey’s death, although, the prosecutor explained: “Now, that doesn’t mean that he — that he meant to kill her. That just means that he meant to do what he did and she ended up dying.” The prosecutor also argued to the jury that manslaughter by culpable negligence was not proven. Haygood was subsequently convicted of second-degree murder and appealed to the Second District Court of Appeal, where he argued that the trial court fundamentally erred in giving the erroneous manslaughter by act instruction that required the jury to find that he intentionally caused Tuckey’s death.
On appeal, the district court held that “[a]lthough Mr. Haygood’s argument [of fundamental error] is arguably supported by supreme court precedent, we adhere to the precedent of this district as established in Barros-Dias v. State, 41 So.3d 370 (Fla. 2d DCA 2010), and Nieves v. State, 22 So.3d 691 (Fla. 2d DCA 2009), and we accordingly affirm Mr. Haygood’s judgment of conviction.” Haygood, 54 So.3d at 1036. The district court recognized that this Court held in Montgomery that the then-standard jury instruction on manslaughter by act was erroneous because, although the offense of manslaughter by act does not require proof of intent to kill, the standard jury instruction informed the jury that to convict for manslaughter by act, the jury must find that the defendant “intentionally caused the death of [the victim].” Haygood, 54 So.3d at 1036. Nevertheless, the Second District relied on Nieves where it had found significant the fact that “unlike Montgomery ... the jury in Nieves’ case was also instructed on the lesser-included offense of manslaughter by culpable negligence.” Haygood, 54 So.3d at 1037 (quoting Nieves, 22 So.3d at 692).
After acknowledging that Montgomery held it was fundamental error to give this jury instruction in cases where the defendant was convicted of second-degree murder, which is one step removed from manslaughter, the Second District held that the erroneous instruction was not fundamental error in this case because the jury was also instructed on manslaughter by culpable negligence. Haygood, 54 So.3d at 1037. Even so, the district court ex *739 pressed doubt about whether that distinction was warranted. The district court stated:
In this case, Mr. Haygood was charged with and convicted of fatally beating his girlfriend. Arguably, the evidence presented at trial is inconsistent with a theory of manslaughter by culpable negligence. Additionally, as for manslaughter by act, the instruction as given was flawed. Thus, if the jury believed Mr. Haygood’s act was an intentional one but not that he possessed the intent to kill, then neither form of manslaughter provided a viable lesser offense of which the jury could find Mr. Haygood guilty. Although the evidence unquestionably supports the jury’s verdict finding Mr. Haygood committed second-degree murder, it is impossible to speculate what the jury would have found had it been properly instructed that manslaughter by act does not require the intent to kill. In this regard, giving the flawed manslaughter by act instruction appears to run afoul of principles which the supreme court has articulated in [Pena v. State, 901 So.2d 781, 787 (Fla.2005)], and Montgomery, 39 So.3d at 257-59.
In sum, adhering to the decisional law of this district, we affirm Mr. Haygood’s judgment of conviction.
Haygood, 54 So.3d at 1037. The Second District then certified a question of great public importance to this Court asking if, in a case where the evidence does not support a theory of culpable negligence, giving the flawed manslaughter by act instruction is fundamental error where the manslaughter by culpable negligence instruction is also given. Id. at 1038. Judge Altenbernd noted in his special concurrence in part and dissent in part, “I simply fail to see the logic by which a fundamental error of this kind becomes harmless merely because a jury receives an alternative instruction that has little or no application to the evidence presented at trial.” Id. (Altenbernd, J., specially concurring in part and dissenting in part).
ANALYSIS
The certified question presented by the district court is solely a legal question. Thus, this Court’s review is de novo. See Kirton v. Fields, 997 So.2d 349, 352 (Fla.2008); see also D’Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003) (stating that the standard of review for pure questions of law is de novo). Because the legal effect of this Court’s decision in State v. Montgomery, 39 So.3d 252 (Fla.2010), is at the heart of the certified question in this case, that decision will be discussed first. We recognized in Montgomery that the then-existing standard jury instruction on manslaughter by act required the jury to find that the defendant “intentionally caused the death” of the victim. See Fla. Std. Jury Instr. (Crim.) 7.7 (2006). We also recognized that section 782.07, Florida Statutes, did not require the jury to make such a finding. That statute provides as follows:
782.07. Manslaughter; aggravated manslaughter of an elderly person or disabled adult; aggravated manslaughter of a child; aggravated manslaughter of an officer, a firefighter, an emergency medical technician, or a paramedic.—
(1) The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
*740 § 782.07(1), Fla. Stat. (2012).[2] In discussing the requirements of this statute, we stated in Montgomery:
We observe that the statute does not impose a requirement that the defendant intend to kill the victim. Instead, it plainly provides that where one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter.
Although in some cases of manslaughter by act it may be inferred from the facts that the defendant intended to kill the victim, to impose such a requirement on a finding of manslaughter by act would blur the distinction between first-degree murder and manslaughter. Moreover, it would impose a more stringent finding of intent upon manslaughter than upon second-degree murder, which, like manslaughter, does not require proof that the defendant intended to kill the victim. Thus, we conclude that under Florida law, the crime of manslaughter by act does not require proof that the defendant intended to kill the victim.
Montgomery, 89 So.3d at 256. As noted above, the manslaughter by act instruction given in this case erroneously imposed an additional element of proof — that the defendant intentionally killed the victim. As we held in Reed v. State, 837 So.2d 366 (Fla.2002), if an erroneous instruction is given as to a disputed element of the offense, and the instruction is pertinent or material to what the jury must consider in order to convict, it is fundamental error; and “fundamental error is not subject to harmless error review.” Id. at 369-70.
In Montgomery, we similarly focused on the fact that the manslaughter by act instruction was “'pertinent or material to what the jury must consider in order to convict,’ ” and emphasized that the defendant is “entitled to an accurate instruction on the lesser included offense of manslaughter.” See Montgomery, 39 So.3d at 258 (quoting State v. Delva, 575 So.2d 643, 645 (Fla.1991)). We concluded that giving this erroneous jury instruction — requiring the jury to find the killing was intentional in order to convict for manslaughter by act — constituted fundamental error where Montgomery was convicted of second-degree murder, an offense not more than one step removed from manslaughter and which, like manslaughter, also does not require any intent to kill. Id. at 259. We also note that in Montgomery’s case, the jury was told:
In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.
Montgomery, 39 So.3d at 256 (quoting Fla. Std. Jury Instr. (Crim.) 7.7 (2006)). However, we concluded that “this language was insufficient to erode the import of the second element: that the jury must find that the defendant intended to cause the death of the victim.” Montgomery, 39 So.3d at 257.
After issuance of the Montgomery decision, we amended the manslaughter jury instruction consistent with our decision in Montgomery to provide that for the crime of manslaughter by act the State must prove the following:
1. (Victim) is dead.

Give 2a, 2b, or 2c depending upon allegations and proof.

2. a. (Defendant^ intentionally committed an act(s) or acts that caused the death of (victim).
*741 b. (Defendant) intentionally procured an act that caused the death of (victim).
c. The death of (victim) was caused by the culpable negligence of (defendant).
In re Amendments to Standard Jury Instructions in Criminal Cases — Instruction 7.7, 75 So.3d 210, 211 (Fla.2011).[3] We turn now to the certified question in this case: If a jury returns a verdict finding a defendant guilty of second-degree murder, does a trial court commit fundamental error by giving an erroneous manslaughter by act instruction when it also gives an instruction on manslaughter by culpable negligence and the evidence supports only a theory of manslaughter by act?
We have long held that fundamental error occurs in a jury instruction where the instruction pertains to a disputed element of the offense and the error is pertinent or material to what the jury must consider to convict. See Delva, 575 So.2d at 644-45. We reiterated in Reed that it is fundamental error to give a standard jury instruction that contains an erroneous statement as to an element of the crime which is disputed. Reed, 837 So.2d at 369. Moreover, we cautioned that “whether the evidence of guilt is overwhelming or whether the prosecutor has or has not made an inaccurate instruction a feature of the prosecution’s argument are not germane to whether the error is fundamental.” Id. In addition, we reiterated that “fundamental error is not subject to harmless error review.” Id. at 369-70.
These are the same principles on which we focused when we decided Montgomery. We made clear that “Montgomery was entitled to an accurate instruction on the lesser included offense of manslaughter.” Montgomery, 39 So.3d at 258. We stated, “Thus, we conclude that fundamental error occurred in this case, where Montgomery was indicted and tried for first-degree murder and ultimately convicted of second-degree murder after the jury was erroneously instructed on the lesser included offense of manslaughter.” Id. Based on our decision in Montgomery, and the principles underlying that decision, we conclude that giving the manslaughter by culpable negligence instruction does not cure the fundamental error in giving the erroneous manslaughter by act instruction where the defendant is convicted of second-degree murder and the evidence supports a finding of manslaughter by act, but does not reasonably support a finding that the death occurred due to the culpable negligence of the defendant.
This Case
In the instant case, we conclude that giving the erroneous manslaughter by act instruction constituted fundamental error. Haygood was convicted of second-degree murder, which is not more than one step removed from the lesser offense of manslaughter.[4] The evidence in this case supported a finding that Haygood intentionally committed an act or acts, and that the act or acts resulted in the victim’s death. The evidence also supported a *742 finding that he had no intent to kill the victim. Significantly, there was no evidence to support a finding that Tuckey’s death resulted from culpable negligence. Haygood’s unambiguous admission that he intended to strike, head butt, choke, and trip Tuckey essentially eliminated the alternate means of committing manslaughter — manslaughter by culpable negligence — as a viable lesser offense. Thus, second-degree murder was the only offense realistically available to the jury under the evidence presented in this case and the instructions given-instructions that required the jury to find intent to kill in order to convict Haygood for manslaughter by act.[5]
Haygood was entitled to have his jury properly instructed on the elements of the charged offense and the lesser included offenses. See Montgomery, 39 So.3d at 258. The elements of the offense were disputed and the instructions were pertinent and material to what the jury must consider in order to convict Haygood of any of the offenses. We further conclude that the culpable negligence instruction did not render the erroneous manslaughter by act instruction to be impertinent or immaterial to what the jury must consider in order to convict. Thus, the erroneous manslaughter by act instruction was fundamental error in this case.
The dissent contends that the jury pardon doctrine was the basis of the majority’s decision in both Montgomery and this case; and it further suggests that the finding of fundamental error in both cases is completely divorced from the question of whether any evidence would have supported a conviction of the lesser included offense of manslaughter. See dissenting op. at 748. This is incorrect. This decision is not based on the jury pardon doctrine and is not hinged on the right of the jury to issue a jury pardon despite the evidence. This decision is firmly founded on the longstanding principle that a defendant is entitled to have the jury correctly instructed on the crime charged and the lesser included offenses. As we have explained, where the erroneous instruction pertains to an element that is material to the jury’s deliberation and is in dispute, fundamental error occurs, as our precedent indicates, if that offense is one step removed from the crime for which the defendant is convicted. In this case, the erroneously instructed element was placed in dispute by the evidence; thus there was a basis on which the jury could find that the lesser included offense was proven.
The dissent also suggests that a manslaughter conviction is proper only where there is proof of sudden heat of passion aroused by provocation. See dissenting op. at 746-47. Because the dissent concludes the evidence in this case did not show heat of passion, the dissent would find that the evidence only supports a conviction for second-degree murder and not manslaughter. However, although many manslaughter cases have involved heat of passion, nothing in the manslaughter statute requires proof of sudden heat of passion or provocation. The manslaughter statute defines manslaughter simply as the killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification, and in which the killing shall not be excusable homicide or murder. See § 782.07(1), Fla. *743 Stat. (2008). Moreover, it is the province of the jury to find the facts supported by the evidence and, based on proper instruction, apply those facts to the statutory elements required for conviction. The error in the manslaughter jury instruction prevented the jury from being able to choose the true verdict in this case — a verdict based on the jury’s application of its fair assessment of the facts concerning Haygood’s intent to the proper elements of the offense as set forth in the manslaughter statute.
The dissent appears to be based on the assumption that the only justification for instructing the jury on manslaughter would be to provide an opportunity for a jury pardon. However, this puts the cart before the horse. The reason for properly instructing the jury on manslaughter is to enable the jury to determine what degree of crime, if any, is proven. The dissent also concludes that the evidence in this ease proved only second-degree murder and, thus, the jury could not possibly have found manslaughter without aid of the jury pardon. That conclusion is unjustified. It is up to the jury to hear the evidence, find the facts, and apply the law to reach a proper and fair verdict. That process was short-circuited in this case by the faulty instruction.
The jury’s verdict of second-degree murder is proof that it necessarily found Hay-good lacked intent to kill. But, because of the faulty instruction on manslaughter, the jury was deprived of the ability to decide whether Haygood’s lack of intent to kill, when considered with all the other evidence, fit within the elements of the offense of manslaughter. Based on the evidence presented, the only non-intentional homicide offense remaining for the jury’s consideration in this case was second-degree murder. The result of incorrectly instructing on a necessarily lesser included offense, or even jettisoning the requirement of instruction on necessarily lesser included offenses as the dissent suggests, is that the jury is deprived of all the tools it needs to reach a proper verdict in the case before it.
CONCLUSION
For the reasons set forth above, we answer the certified question in the affirmative. We hold that giving the manslaughter by culpable negligence instruction does not cure the fundamental error in giving the erroneous manslaughter by act instruction where the defendant is convicted of an offense not more than one step removed from manslaughter and the evidence supports a finding of manslaughter by act, but does not reasonably support a finding that the death occurred due to the culpable negligence of the defendant. Accordingly, we quash the decision of the Second District in Haygood v. State, 54 So.3d 1035 (Fla. 2d DCA 2011), and remand with directions that Haygood’s conviction for second-degree murder be reversed and a new trial granted.
It is so ordered.
PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LABARGA and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.

. We held in Montgomery that the standard jury instruction on manslaughter by act was erroneous because it imposed an element of intent to kill not contained in the manslaughter statute, section 782.07, Florida Statutes (2006). See Montgomery, 39 So.3d at 258. We concluded that giving the erroneous instruction was fundamental error where Montgomery was convicted of second-degree murder, which was only one step removed from manslaughter and which also does not require any intent to kill. Id.

. The statute remains in the same form as it was when we decided State v. Montgomery.

. Shortly after Montgomery was issued in 2010, the Court issued an interim instruction. See In re Amendments to Standard Jury Instructions in Criminal Cases — Instruction 7.7, 41 So.3d 853 (Fla.2010). The final revisions to the instruction were accomplished in 2011. See In re Amendments to Standard Jury Instructions in Criminal Cases — Instruction 7.7, 75 So.3d 210 (Fla.2011).

. We held in Pena v. State that "when the trial court fails to properly instruct on a crime two or more degrees removed from the crime for which the defendant is convicted, the error is not per se reversible, but instead is subject to a harmless error analysis." Pena, 901 So.2d 781, 787 (Fla.2005).

. The instruction for second-degree murder requires proof, inter alia, that the victim is dead, the death was caused by the criminal act of the defendant, and there was an unlawful killing of the victim by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. See Fla. Std. Jury Instr. (Crim) 7.4 (2011). There is no requirement of intent to kill.