[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11740
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-20557-PAS


JAMES C. MARSHALL,

Petitioner-Appellant,

versus

DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 26, 2016)

Before WILSON, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner James Marshall, proceeding *pro se*, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  On appeal, Petitioner argues that his appellate counsel was ineffective for failing to file a supplemental brief challenging the manslaughter jury instruction given by the trial court.  After careful review, we affirm.

## I.    BACKGROUND

### A.    State Criminal Conviction and Direct Appeal

On April 2, 2004, Shemeria Brown awoke in the middle of the night to sounds of her grandmother, Marie Sanders, screaming.  When Brown went to investigate, she saw Petitioner with his hands around Sanders's neck.  Brown called the police and tried to force Petitioner off of Sanders, but she was unsuccessful.  At some point, Sanders stopped screaming and fell to the floor.  After she fell, Petitioner continued to strangle her.  When police arrived, Petitioner still had his hands around Sanders's neck and officers had to intervene.  Officers administered CPR but were not able to resuscitate Sanders.

The State of Florida subsequently charged Petitioner in an information with second-degree murder pursuant to Florida Statute § 782.04(2) for the strangulation death of Marie Sanders.  At trial, Petitioner requested an instruction on the lesser-included offense of manslaughter.  Following closing arguments, the trial court instructed the jury on second-degree murder and the lesser-included offense of

manslaughter.  The trial court then stated that in order "to convict for second degree murder it is not necessary for the State to prove that the defendant had an intent to cause death."  Consistent with the 2006 standard jury instructions, the trial court instructed the jury that in order to find Petitioner guilty of manslaughter, the jury had to find beyond a reasonable doubt that:  "One, Marie Sanders is dead. Two, [Petitioner] intentionally caused the death of Marie Sanders; or the death of Marie Sanders was caused by the culpable negligence of [Petitioner]."  The trial court defined culpable negligence as "a course of conduct showing a reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise the presumption of a conscious indifference to consequences."

The jury found Petitioner guilty of second-degree murder, and the trial court sentenced him to 45 years' imprisonment.  On May 2, 2008, Petitioner filed an appeal in the Third District Court of Appeal ("Third DCA"), arguing that the evidence was insufficient to support the second-degree murder conviction, the trial court erred by failing to conduct various hearings and evaluations, and the trial court erred by not requiring a proper presentence report.

In February 2009, while Petitioner's appeal was pending in the Third DCA, Florida's First District Court of Appeal ("First DCA") held that the

lesser-included offense of manslaughter does not require an intent to kill. *Montgomery v. State*, 70 So. 3d 603, 604, 606–07 (Fla. 1st DCA 2009) ("*Montgomery I*").   The First DCA explained that the 2006 standard manslaughter-by-act jury instruction, which provided that the defendant "intentionally caused [the victim's death]," improperly imposed an additional element of intent to kill, and such an error constituted fundamental error. *Id.* at 70 So. 3d at 607–08.   Based on the conflict among the Florida intermediate appellate courts, the First DCA also certified the following question to the Florida Supreme Court:  "Is the state required to prove that the defendant intended to kill the victim in order to establish the crime of manslaughter by act?" *Id.* at 608.

One month later, on March 25, 2009, the Third DCA *per curiam* affirmed Petitioner's conviction and sentence without a written opinion. Petitioner filed a motion for rehearing, and on July 22, 2009, the Third DCA withdrew its prior opinion, and substituted a new opinion addressing Petitioner's argument that the trial court erred by not having a *Faretta*[1] hearing.  The Third DCA affirmed Petitioner's conviction and sentence, and the mandate issued on August 7, 2009.  Petitioner filed a motion for belated discretionary review with the Florida Supreme Court, but later moved to

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

voluntarily dismiss that motion.  Petitioner's appellate counsel filed a petition for writ of certiorari with the U.S. Supreme Court, which was denied on April 19, 2010.  *See Marshall v. Florida*, 130 S. Ct. 2103 (2010).

In the meantime, Florida's Second District Court of Appeal ("Second DCA") and the Third DCA determined that giving the standard manslaughter-by-act jury instruction that included an intent to kill did not constitute fundamental error.  *Valdes-Pino v. State*, 23 So. 3d 871, 972 (Fla. 3d DCA 2009); *Nieves v. State*, 22 So. 3d 691, 692 (Fla. 2d DCA 2009).  The Florida Supreme Court took up this issue in April 2010, nearly one year after the Third DCA affirmed Petitioner's conviction and sentence.  *State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010).  In *Montgomery*, the Florida Supreme Court held that the standard manslaughter-by-act jury instruction improperly included an intent to kill and use of such an instruction constituted fundamental error.  *Id.* at 259–60.  Shortly thereafter, the Third DCA determined that the use of this manslaughter-by-act instruction did not constitute fundamental error if the jury was also provided an instruction regarding culpable negligence. *Cubelo v. State*, 41 So. 3d 263, 267–68 (Fla. 3d DCA 2010).

B.    **State Post-Conviction Proceedings**

In December 2010, Petitioner filed a *pro se* state petition for a writ of habeas corpus.[2] He asserted that his appellate counsel performed deficiently by failing to seek supplemental briefing on the issue of whether the manslaughter-by-act jury instruction provided by the trial court constituted fundamental error. Because the First DCA had decided that a manslaughter-by-act jury instruction that included an intent to kill constituted fundamental error, Petitioner argued that he was prejudiced by his appellate counsel's failure to raise this issue while his appeal was pending. In July 2011, the Third DCA summarily denied Petitioner's habeas petition. *Marshall v. State*, 75 So. 3d 286 (Fla. 3d DCA 2011).

## C.     Federal Habeas Petition

In 2012, Petitioner filed a *pro se* § 2254 petition, raising several grounds for relief. Of relevance, Petitioner argued that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court provided an erroneous manslaughter-by-act jury instruction. He asserted that he was prejudiced by his counsel's failure to seek supplemental briefing on this issue following the First DCA's issuance of *Montgomery I* during the pendency of his direct appeal.

---

[2] Petitioner also filed a Florida Rule of Appellate Procedure 3.850 post-conviction motion raising the same claim—that appellate counsel was ineffective for failing to appeal the manslaughter jury instruction as fundamental error. The trial court dismissed this claim, so that it could be properly raised in a state petition for a writ of habeas corpus.

The magistrate judge issued a Report and Recommendation ("R&R"), recommending denying the petition.  As to Petitioner's ineffective-assistance claim, the magistrate judge concluded that even if appellate counsel were deficient for failing to file a supplemental brief following the First DCA's decision in *Montgomery I*, Petitioner could not show that he was prejudiced because the Third DCA shortly thereafter held that the manslaughter-by-act jury instruction at issue in *Montgomery I* was not fundamental error. Moreover, although the Florida Supreme Court eventually held that a manslaughter-by-act jury instruction including an intent to kill constituted fundamental error, the Third DCA later determined that the error was not fundamental if the trial court also instructed the jury on culpable negligence, as the trial court did in Petitioner's case.  The magistrate judge therefore concluded that the state court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.

After considering Petitioner's objections, the district court affirmed the R&R in part, but referred the case back to the magistrate judge to consider Petitioner's ineffective-assistance claim in light of the Florida Supreme Court's decision in *Haygood v. State*, 109 So. 3d 735, 740–41 (Fla. 2013), which held that the manslaughter instruction containing an element of intent to kill was fundamental

7

error, and was not cured by a subsequent instruction on manslaughter by culpable negligence.

In a supplemental R&R, the magistrate judge concluded that the state court's rejection of Petitioner's ineffective-assistance claim was not contrary to, or an unreasonable application of, clearly established federal law because Petitioner's appellate counsel was not unreasonable for failing to anticipate the change in Florida law regarding the manslaughter instruction. Indeed, Petitioner's direct appeal proceedings had concluded long before the Florida Supreme Court's decisions in *Montgomery II* and *Haygood*. Moreover, even after the Florida Supreme Court determined that the instruction constituted fundamental error, the Third DCA repeatedly held that the trial court's use of the erroneous jury instruction was cured where the trial court also instructed the jury on culpable negligence.

Over Petitioner's objections, the district court adopted the supplemental R&R and denied Petitioner's § 2254 petition. However, the district court granted Petitioner a certificate of appealability on his ineffective-assistance claim, stating that "[a] reasonable jurist might find that appellate counsel's failure to raise *Montgomery I* constituted ineffective assistance of counsel."

## II. DISCUSSION

### A.    Applicable Standard

8

We review a district court's denial of a habeas petition under § 2254 *de novo*. *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1245 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1562 (2015). Although we review the district court's factual findings for clear error, we review its rulings on questions of law and mixed questions of law and fact *de novo*. *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth a standard that makes granting habeas relief difficult on a claim that the state court has adjudicated on the merits. *See White v. Woodall*, 572 U.S. __, 134 S. Ct. 1697, 1702 (2014). Under AEDPA, a federal court may only grant habeas relief on a claim that was adjudicated on the merits if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## B.    Ineffective Assistance of Appellate Counsel

Petitioner asserts that the district court erred in denying his § 2254 petition because his appellate counsel rendered ineffective assistance by failing to challenge the trial court's manslaughter-by-act jury instruction following the First DCA's decision in *Montgomery I*. To establish ineffective assistance of counsel, a § 2254 petitioner must show that (1) counsel's performance was deficient, falling

9

below an objective standard of reasonableness, and (2) the petitioner suffered prejudice as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Prejudice requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because a § 2254 petitioner must establish both *Strickland* prongs to prevail on an ineffective-assistance claim, a court need not consider both prongs if the petitioner fails to show either deficient performance or prejudice. *Cox v. McNeil*, 638 F.3d 1356, 1362 (11th Cir. 2011).

In the present case, the Third DCA denied Petitioner's ineffective-assistance claim without explanation. *See Marshall v. State*, 75 So. 3d 286 (Fla. 3d DCA 2011). Because we interpret the Third DCA's decision as a denial on the merits, it is entitled to deference under § 2254(d). *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002) (concluding that state court's summary denial of claim is considered an adjudication on the merits for purposes of § 2254(d)(1)). Petitioner must therefore show that there was "no reasonable basis" for the state court's decision. *See Wilson v. Warden, Ga. Diagnostic Prison*, __ F.3d __, 14-10681, manuscript op. at 14–15 (11th Cir. Aug. 23, 2016) ("Where a state court's decision is unaccompanied by an explanation," a petitioner must show "there was no reasonable basis for the state court to deny relief."

(quotations omitted)).  Petitioner has not disputed any facts, and therefore any claim for relief must be based on whether the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).

"It is well established that the Supreme Court's decision in *Strickland* is the controlling legal authority to be applied in ineffective assistance of counsel claims."  *Sullivan v. DeLoach*, 459 F.3d 1097, 1108 (11th Cir. 2006) (quotations omitted); *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.").  Under *Strickland*'s performance prong, we presume counsel's performance was "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 688–89.  And in the context of a direct appeal, appellate counsel does not have a duty to raise every non-frivolous issue, as an effective attorney will winnow out the weaker arguments, even if they have some merit.  *Philmore*, 575 F.3d at 1264.

Here, Petitioner has not shown that the state court's denial of his ineffective-assistance claim was contrary to, or an unreasonable application of, clearly established federal law.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) (concluding that § 2254(d) does not require the state court to cite to a Supreme Court decision, so long as the state court's reasoning does not contradict any Supreme Court

11

decisions).  Petitioner argues that his appellate counsel was ineffective for failing to argue that the trial court's manslaughter-by-act jury instruction was erroneous. However, at the time Petitioner filed his direct appeal in May 2008, neither the Florida Supreme Court nor any Florida appellate court had deemed the instruction invalid.  It was not until February 2009, while Petitioner's direct appeal was pending, that the First DCA determined that the standard manslaughter jury instruction constituted fundamental error.  *See Montgomery I*, 70 So. 3d at 607. Even assuming that appellate counsel is required to keep abreast of relevant case law during the pendency of an appeal, *Montgomery I* was a decision of the First DCA, not the Third DCA where Petitioner's appeal was pending.  *See Pardo v. State*, 596 So. 2d 665, 667 (Fla. 1992) ("[A]s between District Courts of Appeal, a sister's circuit's opinion is merely persuasive.").  What's more is that *Montgomery I* was distinguishable from the facts of the present case because the trial court in *Montgomery I* only provided the jury with the manslaughter-by-act instruction containing the intent-to-kill element.  *See Montgomery I*, 70 So. 3d at 603–04.  It did not also instruct the jury on manslaughter by culpable negligence, as the trial court did in the present case.  *See id.*  Because *Montgomery I* had no precedential authority in the Third DCA, and because the facts of the present case were distinguishable from *Montgomery I*, the state court could have reasonably

12

determined that appellate counsel's failure to file supplemental briefing based on *Montgomery I* did not fall below the objective standard of reasonableness.[3]

Furthermore, effective representation does not require an attorney to anticipate changes in the law. *See Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." (quotations omitted)). Again, no court had even considered the manslaughter-by-act jury instruction issue when appellate counsel filed Petitioner's initial brief. Further, the only district court of appeal to consider the issue during the pendency of Petitioner's appellate proceedings was not the court where Petitioner filed his direct appeal. *See Montgomery I*, 70 So. 3d at 607–08. Moreover, the Florida Supreme Court did not determine that the manslaughter jury instruction given during Petitioner's trial— which included both the instruction on the element of intent to kill and manslaughter by culpable negligence—was erroneous until nearly four years after Petitioner's conviction and sentence were affirmed. *See Haygood*, 109 So. 3d at 740–41. Accordingly, Petitioner's appellate counsel was not ineffective for failing

---

[3] To the extent Petitioner relies on Florida appellate court decisions in support of his argument that counsel performs deficiently by failing to raise favorable issues decided in other Florida intermediate appellate courts during the pendency of a direct appeal, his reliance is misplaced. *See Rambaran v. Sec'y, Dep't of Corrs.*, 821 F.3d 1325, 1333 (11th Cir. 2016) (explaining that the decision of a state intermediate appellate court does not clearly establish federal law for purposes of § 2254).

to anticipate, and challenge on appeal, that the manslaughter jury instruction given during Petitioner's trial would eventually be deemed improper. *See Rambaran*, 821 F.3d at 1334 (affirming denial of petitioner's § 2254 petition raising a claim that appellate counsel was ineffective for failing to challenge Florida's manslaughter-by-act jury instruction because "[n]o holding of the Supreme Court clearly establishes that in order to perform with the 'wide range of reasonable professional assistance,' counsel must accurately predict how the law will turn out or hedge every bet in hope of a favorable development." (citation omitted)). Because Petitioner's appellate counsel did not perform deficiently, Petitioner cannot show that the state court's denial of his claim was incorrect, much less that it involved an unreasonable application of clearly established federal law.

## III.  CONCLUSION

For the reasons stated above, we affirm the denial of Petitioner's § 2254 petition for a writ of habeas corpus.

**AFFIRMED.**

14