# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2024-0196
Lower Tribunal No. 2021-CF-006891-O

_____

STATE OF FLORIDA,

Appellant,

v.

JAMES EARL GAFFORD,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Michael J. Snure, Judge.

July 18, 2025

WOZNIAK, J.

The State appeals the trial court's order granting James Earl Gafford's motion to suppress and ruling that the State violated his *Miranda*[1] rights. The trial court determined that law enforcement failed to adequately answer a preliminary question Gafford asked while being read his *Miranda* rights and that law enforcement should have ceased its interrogation after Gafford invoked his right to counsel later in the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

interrogation. The State contends that law enforcement correctly answered Gafford's question concerning his *Miranda* rights and, upon invoking his right to counsel, Gafford then reinitiated contact with law enforcement and voluntarily waived his right to counsel. We agree with the State and reverse.

On June 25, 2021, a grand jury indicted Gafford for first-degree murder. Gafford was interviewed twice with respect to the murder, once in April 2021 and again in June 2021. This appeal concerns the suppression of statements obtained during the June 2021 interview during which Gafford confessed.

Gafford was escorted to an interview room in handcuffs. Detective Daniel Maganiello read Gafford his *Miranda* rights. Maganiello asked Gafford whether he understood that if he could not afford an attorney one would be provided for him; Gafford responded, "I understand that. But . . . would I be able to get one?" Maganiello responded, "Would you—of course. Everyone has a—everyone has a right to an attorney. Sure." After responding, Maganiello continued, "Has anyone threatened you or promised you anything to get you to talk to me?" Gafford said he felt threatened because he had been arrested for something he did not do. Maganiello told him that they were going to talk about why he was there and asked if Gafford had any questions. Gafford responded, "What's this for?" Maganiello explained why Gafford was being interviewed.

2

After some questioning, Gafford stated, "Damn. I want to speak with my lawyer." Directly after that statement, Gafford, without prompting from either officer in the interview room, stated, "How long did it take you to prove this?" Maganiello responded, "I'm sorry?" Gafford continued to speak, stating that he was with the victim, that he was high, and that he "just got scared." Two minutes later, Gafford began asking Maganiello questions:

> Gafford: What about the shoestrings? What about that?
> Maganiello: I'm sorry.
> Gafford: What about the shoestrings around her neck? You get anything off that, on me?
> Maganiello: Hmm.
> Gafford: You say were going to answer my questions if I'm answering yours.
> Maganiello: I have to be clear. I don't know if you said it or not because you kind of said it under your breath. Were you requesting an attorney? I just got to be clear on that because I'm not going to continue. I just heard you say something; I wasn't sure what you said.
> Gafford: Nah. I was just saying you wanted uh you said about you can't afford one you can get one.
> Maganiello: Ok. So, you're not requesting an attorney.
> Gafford: No.
> Maganiello: Ok. I just wanted to make sure we're clear because I thought I heard you say something but it wasn't clear. So, what was your question about the shoelaces?

Shortly after that exchange, Gafford confessed to the murder.

The trial court granted a subsequently-filed motion to suppress statements on two grounds: (1) Maganiello did not provide an adequate response to Gafford when

3

he asked, "[W]ill I be able to get [an attorney]?"[2]; and (2) the detectives did not stop the interview when Gafford said, "Damn. I want to speak to my lawyer." This appeal followed.

We begin our analysis by identifying our standard of review. "When reviewing an order on a motion to suppress, an appellate court defers to a trial court's factual findings but reviews its legal conclusions de novo." *State v. Freeman*, 377 So. 3d 225, 228 (Fla. 6th DCA 2024). However, this Court's deference to the trial court's findings of fact "does not fully apply when the findings are based on evidence other than live testimony." *Parker v. State*, 873 So. 2d 270, 279 (Fla. 2004); *see also Thomas v. State*, 351 So. 3d 197, 204 (Fla. 1st DCA 2022) ("[W]e apply a less deferential standard to the trial court's factual findings to the extent that they are based on the video."). Here, the interrogation video provided the basis for the trial court's factual findings. So, as to those findings, we apply a less deferential standard.

We turn first to determine whether Maganiello properly answered Gafford's prefatory question. "[I]f, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer." *Almeida v. State*, 737 So. 2d 520, 525 (Fla. 1999). Once the officer provides an answer, the

---

[2] The order granting suppression states that Gafford said, "**Will** I be able to get one?" However, Gafford actually said, "**Would** I be able to get one?"

4

interview may continue provided that the suspect has not invoked his or her rights in the meantime. *Id.* Accordingly, to comply with the rule announced in *Almeida*, law enforcement must make a good-faith effort to give a simple and straightforward answer to a clear question concerning a suspect's rights; if after answering, the suspect does not make an invocation, the interview may continue.

Here, Maganiello complied with *Almeida*. After explaining that if Gafford could not afford an attorney, one would be provided, Gafford responded, "I understand that. But . . . would I be able to get one?" The trial court characterized this question as a prefatory question seeking clarification about his right, not an invocation of Gafford's right to counsel. The video does not contradict the trial court's determination on that point; Gafford sought to clarify whether he would be provided an attorney if he could not afford one. The trial court, however, then determined that Maganiello's response—"Would you—of course. Everyone has a— everyone has a right to an attorney"—was, in effect, a refusal to answer Gafford's question.[3] On this point, the trial court's determination is incorrect. Maganiello did exactly what *Almeida* requires; he provided a straightforward, accurate, and simple response to Gafford's question.

---

[3] Because of this purported refusal, the trial court suppressed all statements up to the point that Gafford asserted, "Damn. I want to speak with my lawyer." However, as discussed later in this opinion, from that statement onward, the trial court provides a different reason for suppression.

Instructive is *State v. Glatzmayer*, 789 So. 2d 297 (Fla. 2001), where under similar circumstances, the Florida Supreme Court found law enforcement officers complied with *Almeida*. In *Glatzmayer*, the suspect asked if the law enforcement officers "thought he should have an attorney." *Id.* at 304. In response, the officers responded, "[T]hat's not our decision to make, that [sic] yours, it's up to you." *Id.* The *Glatzmayer* court found this response was "simple, reasonable, and *true*." *Id.* at 305; *see also State v. Parker*, 144 So. 3d 700, 704 (Fla. 1st DCA 2014) (holding that detective gave a good faith response—"simple, straightforward, and honest"—to defendant's question, "'Can you just tell me if I need to get a lawyer or something?'" when detective said "'Listen, that's your right. But what I'm interested in is the truth,—'"; same conclusion where defendant said, "'[I]s there a lawyer in the building,'" and detective said, "'No, you would have to call one'"); *Chaney v. State*, 903 So. 2d 951 (Fla. 3d DCA 2005) (holding that where defendant asked officer whether he thought defendant needed a lawyer, officer's response, "'Do you think you need one?'" was proper and correctly informed defendant that it was up to him).

Having determined that Maganiello sufficiently responded to Gafford's prefatory question, we turn next to determine whether the officers improperly continued their questioning after Gafford stated later in the interview, "Damn. I want to speak with my lawyer."

"When a suspect unequivocally invokes [his] right to counsel, the officers must immediately stop questioning the suspect." *State v. Penna*, 385 So. 3d 595, 600 (Fla. 2024) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). That invocation, however, does not mean officers may never again question a suspect in a custodial setting. *Id.* (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983)). In *Penna*, the Florida Supreme Court established a two-prong analysis to determine whether post-invocation statements violate *Miranda* based on their interpretation of *Edwards* and *Bradshaw*: (1) the defendant must reinitiate contact with the police; and (2) there must be a valid waiver of the *Miranda* rights already invoked. *Id.*; s*ee also Welch v. State*, 992 So. 2d 206, 214-15 (Fla. 2008) ("[I]f the accused initiates further conversation, is reminded of his rights, and knowingly and voluntarily waives those rights, any incriminating statements made during this conversation may be properly admitted." (citing *Bradshaw*, 462 U.S. at 1045-46)).

After Gafford said, "Damn. I want to speak with my lawyer," the officers did not thereafter question Gafford. Instead, Gafford then reinitiated contact with the officers, asking Maganiello, "So how long did it take you to prove this?" Maganiello responded, "I'm sorry?" After which, Gafford again continued speaking at length. When Gafford stopped speaking, Maganiello sought to clarify whether Gafford was invoking his right to counsel. Gafford said, "Nah. I was just saying you wanted uh you said about you can't afford one you can get one." Maganiello again asked

7

Gafford if he was requesting an attorney. Gafford without equivocation said, "No." The entire exchange—Gafford invoking his right to counsel, reinitiating contact with the officers, and later asserting that he was not requesting an attorney—lasted four minutes. Under the circumstances, the officers complied with the mandate in *Penna*. *See Herard v. State*, 390 So. 3d 610, 619 (Fla. 2024) (holding that law enforcement officer's continued questioning after three-minute exchange where defendant invoked counsel then immediately reinitiated contact with interrogating officers and waived right to counsel did not violate defendant's *Miranda* rights).

Accordingly, the trial court erred by granting Gafford's motion to suppress statements made in the June 2021 interview.

REVERSED and REMANDED.

STARGEL and SMITH, JJ., concur.

James Uthmeier, Attorney General, Tallahassee, and Kaylee D. Tatman, Assistant Attorney General, Daytona Beach, for Appellant.

Jeffrey D. Deen, Regional Counsel, and Sarah Moore, Assistant Regional Counsel, of Office of Criminal Conflict and Civil Regional Counsel, Casselberry, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED